## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| DUAL DIAGNOSIS TREATMENT CENTER, INC., d/b/a SOVEREIGN HEALTH OF CALIFORNIA; SOVEREIGN HEALTH OF PHOENIX, INC.; SHREYA HEALTH OF CALIFORNIA, INC.; SHREYA HEALTH OF ARIZONA, INC.; and VENDANTA ABORATORIES, INC., | ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 22 C 846 |
| HEALTH CARE SERVICE CORPORATION, d/b/a BLUE CROSS AND BLUE SHIELD OF ILLINOIS, | ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

**CHARLES P. KOCORAS, District Judge:**

Before the Court is Defendant Health Care Service Corporation d/b/a Blue Cross and Blue Shield of Illinois's ("BCBSIL") Motion to Dismiss. Plaintiffs are or were out-of-network providers (*i.e.*, healthcare providers without a contract with BCBSIL) who allege they provided healthcare services to nine[1] of their former patients who were members of BCBSIL health insurance plans, and now seek payment for those services in this lawsuit. According to Plaintiffs, they are entitled to payment for services

---

[1] Plaintiffs originally named eleven patients but have conceded there are no claims related to two of those patients, Ha.La. and Je.Lo. Thus, all references to patients Ha.La. and Je.Lo. are stricken from the Complaint.

provided to ten of the patients under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). Plaintiffs also seek recovery under unspecified provisions of "Illinois State law." For the following reasons, the Court grants BCBSIL's Motion to Dismiss.

## **BACKGROUND**

Plaintiffs Dual Diagnosis Treatment Center, Inc. d/b/a Sovereign Health of California ("Dual Diagnosis"), Sovereign Health of Phoenix, Inc. ("Sovereign Phoenix"), Shreya Health of California, Inc. ("Shreya California"), Shreya Health of Arizona, Inc. ("Shreya Arizona"), and Vedanta Laboratories, Inc. ("Vedanta"), are five "entities that provided in- and outpatient substance abuse and/or mental health treatment to various patients in California, Arizona, Illinois, and other locations across the United States." Dkt. # 1, ¶ 12. Each Plaintiff is "out-of-network" with BCBSIL, meaning Plaintiffs are not contracted with BCBSIL to provide services to their insureds at a discounted rate. *Id.*, ¶¶ 7, 47.

Plaintiffs allege they provided health care services to nine patients who possessed health coverage under health plans issued and/or administered by BCBSIL.[2] *Id.*, ¶¶ 18–19. Plaintiffs contend that each patient who received treatment from the respective Plaintiff signed a written assignment of benefits[3], which entitled Plaintiffs to be paid

---

[2] Eight out of the nine patients are covered under employer-sponsored plans that are governed by ERISA. Plaintiffs allege that each of these health plans is an "employee benefit plan" as defined by ERISA. One patient, El.Eg., is covered by a non-ERISA employer sponsored plan.

[3] Plaintiffs did not attach copies of the assignments to the Complaint.

2

directly for any services rendered to the patients and assigned Plaintiffs the patients' legal rights to recover benefits. *Id.*, ¶ 50. For each respective patient, the Complaint includes allegations that: (1) the patient was covered under a BCBSIL-administered or -insured health plan; (2) the respective provider/plaintiff received an assignment of benefits prior to providing the services at issue; (3) quoted terms of the alleged assignments; (4) the relevant health plan covers out-of-network, out-of-state health services that were provided to the patients; (5) recite the relevant plan's deductible, copay, and precertification requirements; and (6) detail the amount of billed charges for each patient, as well as the amount that BCBSIL actually paid to the patients. *Id.*, ¶¶ 49–123.

Plaintiffs contend that, after the services were provided to each respective patient, the treating provider submitted claim forms for payment for the services to BCBSIL, which notified BCBSIL they had valid assignments from the patients. *Id.*, ¶¶ 125–26. Plaintiffs further allege that BCBSIL approved these claims, but that BCBSIL "arbitrarily disregarded their assignments and/or significantly underpaid claims." *Id.*, ¶ F.

Based on their allegations, Plaintiffs assert a single claim for payment of benefits under ERISA and unidentified "Illinois State laws and regulations." *Id.*, ¶¶ 141, 155. The Complaint alleges that BCBSIL's conduct violated ERISA by failing to honor Plaintiffs' assignment of benefits and instead making payments directly to former patients, by failing to provide notification of these payments to the Plaintiffs, and by

3

paying less than the amounts owed for the services provided to the patients. *Id.*, ¶¶ 152–55.

BCBSIL now moves to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6). In the Complaint, Plaintiffs allege they are entitled to benefits "according to the Plan terms" of each individual patient's benefit plan. *Id.*, ¶ 141. However, BCBSIL argues several of the patients' benefit plans include anti-assignment provisions[4], administrative remedies that must be exhausted[5], and payment of benefit terms[6] which, according to BCBSIL, expressly contradict the allegations in Plaintiffs' Complaint and defeat Plaintiffs' claims.

BCBSIL also argues that with respect to patient El.Eg., who Plaintiffs allege is not a participant or beneficiary of an ERISA-governed plan, Plaintiffs only allege in a conclusory fashion that BCBSIL violated "Illinois State law and regulations," which is not sufficient to state a claim. Lastly, BCBSIL contends Plaintiffs fail to include any substantive allegations as to Plaintiff Dual Diagnosis.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th

---

[4] *See* Dkt. # 16-1, at Table 1 (setting forth the exact language of the anti-assignment provisions).

[5] *See* Dkt. # 16-1, at Table 2 (setting forth the exact language of the exhaustion requirement provisions).

[6] BCBSIL says the relevant plan terms for patient Ko.Lu. expressly provide that BCBSIL's obligations under the plan were discharged upon its payment to patient Ko.Lu., and explicitly prohibits the type of reimbursement that Plaintiffs seek to recover.

Cir. 2012). The Court accepts as true well pled facts in the complaint and draws all reasonable inferences in favor of the plaintiff. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). The allegations in the complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A plaintiff need not provide detailed factual allegations, but it must provide enough factual support to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The claim must be described "in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a Rule 12(b)(6) motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible if the complaint contains sufficient alleged facts that allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

## DISCUSSION

BCBSIL moves to dismiss Plaintiffs' claims on a number of independent bases. The Court addresses each argument in turn.

## I.     Exhaustion of Administrative Remedies

BCBSIL argues Plaintiffs' Complaint must be dismissed because Plaintiffs failed to exhaust their administrative remedies prior to filing this action.  Although ERISA does not require administrative exhaustion as a prerequisite to suit, the Seventh Circuit has interpreted ERISA as requiring exhaustion of administrative remedies as a prerequisite to bringing suit under the statute.  *Schorsch v. Reliance Standard Life Ins. Co.*, 693 F.3d 734, 739 (7th Cir. 2012).  That said, however, "courts may excuse a failure to exhaust administrative remedies where there is a lack of meaningful access to review procedures, or where pursuing internal plan remedies would be futile."  *Id.* (internal quotation marks omitted).

Because failure to exhaust administrative remedies is an affirmative defense, it cannot provide a basis for a motion to dismiss unless the plaintiff's complaint pleads him out of court.  *Graham v. United Parcel Serv.*, 519 F. Supp. 2d 801, 807–08 (N.D. Ill. 2007) (citing *Salas v. Wis. Dep't. of Corr.*, 493 F.3d 913, 921–22 (7th Cir. 2007)); *see also Zhou v. Guardian Life Ins. Co. of Am.*, 295 F.3d 677, 680 (7th Cir. 2002) ("Zhou admits that he did not exhaust his administrative remedies and pursue further administrative appeals of the partial denial of his claim.").  Where a complaint shows that the plaintiff failed to exhaust his available administrative remedies, it must also plead sufficient facts to bring it within one of the two exceptions to the exhaustion requirement.  *Zhou*, 295 F.3d at 680; *Bourassa v. Prudential Ins. Co. of Am.*, 2006 WL 3065335, at *2–3 (N.D. Ill. 2006).

6

Plaintiffs concede they failed to exhaust their administrative remedies but nevertheless argue the exhaustion requirement should be excused because they were never given the opportunity to engage in the administrative process because there was no information provided to the Plaintiffs or the patients under which they could proceed with any administrative appeal. Plaintiffs say that by the time they were finally made aware of how BCBSIL handled the various claims, it was too late to proceed through the administrative appeals process and therefore the appeal process became futile.

BCBSIL claims Plaintiffs did not "allege they ever provided BCBSIL with any notice that they claimed to possess assignments of the patients' benefits, such that BCBSIL would have had any alleged obligation to notify them of determinations." Dkt. # 16, at 12. But this is not entirely correct. Plaintiffs allege their claims for payment submitted to BCBSIL notified BCBSIL that Plaintiffs had valid assignments from the patients and asserted Plaintiffs' right to receive any benefits owed to the patients under the terms of the plans. *See* Dkt. # 1, ¶ 125. Plaintiffs allege they never received any response to their claims for payment, nor were they notified that BCBSIL issued the payment checks directly to the patients. *Id.* ¶¶ 151–52. Thus, Plaintiffs claim they were unable to challenge any of the payments made to the patients because they were not given notice of the payments and were not given copies of the Explanation of Benefits.[7] *Id.* ¶ 154.

---

[7] Plaintiffs do not specifically allege that the patients themselves were not provided with an Explanation of Benefits.

However, as BCBSIL points out, Plaintiffs have not cited any authority requiring BCBSIL to provide Plaintiffs or the patients with the plan documents that contain plan appeal requirements, such as a summary plan description. BCBSIL says because it was not the plan administrator for any of the plans, it was not responsible for providing such information to the patients, let alone Plaintiffs. Absent any authority establishing BCBSIL's obligation to provide Plaintiffs with documentation regarding the appeal process, the Court cannot reasonably conclude there was a lack of meaningful access to the review procedures such that Plaintiffs would be excused from exhausting their administrative remedies on that basis.

Next, "for a party to come within the futility exception, he must show that it is certain that his claim will be denied on appeal, not merely that he doubts that an appeal will result in a different decision." *Zhou*, 295 F.3d at 680 (cleaned up). Again, Plaintiffs concede they did not pursue their administrative remedies, and Plaintiffs proffer no facts that would lead this Court to find that it was a certainty an appeal would result in the denial of Plaintiffs' claims. The futility exception does not apply. *See id.* Plaintiffs' failure to exhaust the available administrative remedies requires dismissal of Plaintiffs' Complaint. The dismissal is without prejudice.

In the interest of judicial economy, however, we will address BCBSIL's remaining arguments.

8

## II.     Valid Assignments

Next up is BCBSIL's argument that Plaintiffs fail to allege valid assignments by several of the patients to Plaintiffs Shreya Arizona, Shreya California, and Sovereign Phoenix because the quoted language from the purported assignments does not explicitly identify one of the Plaintiffs as the assignee.[8]  The quoted language is as follows:

> I patient/policyholder irrevocably assign, transfer, and convey to Provider the exclusive rights to benefits, insurance proceeds or other moneys otherwise due to me for services rendered by Providers ("Benefits") from my insurer, employee benefit plan, welfare benefit plan, government plan, tortfeasor or other liable third party ("Liable Third Parties") and all administrative, arbitral, judicial or other rights I may have relating to the recovery of Benefits from Liable Third Parties.

Complaint, ¶¶ 55, 64, 72, 80, 88, 97, 104, 111, 118.

In their Response, Plaintiffs claim that the assignments to these Plaintiffs explicitly define one of the Plaintiffs as the "Provider"; however, that language is not found in the Complaint and Plaintiffs do not attach copies of any of the assignments to the Complaint.  Nevertheless, the allegations state that the quoted language is from the assignment by the specific patient to the specific provider.  Accepting all well-pled facts as true and drawing all reasonable inferences in Plaintiffs' favor—as the Court is required to do in the context of the instant motion—these allegations are sufficient to plausibly suggest Plaintiffs had valid assignments.

---

[8] The quoted language from the two Vedanta assignments expressly identifies Vedanta as the assignee (*see* Complaint, ¶¶ 57, 90); however, both plans contain anti-assignment provisions.

### III. Anti-Assignment Provisions

As noted above, five of the patients' plans contain anti-assignment provisions, which BCBSIL argues expressly prohibit the patients from assigning the claims at issue in the Complaint to Plaintiffs. In response, Plaintiffs "do not dispute that generally, anti-assignment provisions are enforceable," but claim the instant motion to dismiss is the first time BCBSIL ever mentioned the anti-assignment provisions "despite repeated requests by plaintiffs regarding the existence of anti-assignment provisions in the various Plans." Dkt. # 21, at 13. Plaintiffs argue they should be given the opportunity to amend the Complaint to allege waiver and/or estoppel arguments against BCBSIL's reliance on the anti-assignment provisions. Plaintiffs also contend they should also be given the opportunity to contact the various patients and determine whether they would be willing to enter the lawsuit as valid parties and assert their rights to the benefits still owed under the various plans.

Because courts should freely give leave to amend "when justice so requires," Plaintiffs' request to file an amended complaint is granted.

### IV. Patient El.Eg.

BCBSIL next argues that, with respect to patient El.Eg. (who Plaintiffs allege is not a participant or beneficiary of an ERISA-governed plan), Plaintiffs only allege in a conclusory fashion that BCBSIL violated "Illinois State law and regulations," which is insufficient to state a claim. Plaintiffs clarify in their Response that they are asserting

10

a breach of contract claim under Illinois law for BCBSIL's failure to pay according to the plan terms.

"Under Illinois law, a plaintiff looking to state a colorable breach of contract claim must allege four elements: (1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages." *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019) (internal quotation marks omitted). A breach of contract claim, however, requires an identifiable breach of a contract term. *Id.* Plaintiffs do not identify a specific plan term which BCBSIL purportedly breached, and thus the breach of contract claim fails.

## V. Dual Diagnosis

BCBSIL argues Dual Diagnosis should be dismissed as a plaintiff because the Complaint fails to contain any substantive allegation that would support its standing, let alone allegations stating a claim on its behalf. Plaintiffs state Dual Diagnosis is the "umbrella company" under which the various providers operate, and because of this Dual Diagnosis was named as lead plaintiff in this action and as an interested party. Plaintiffs do not explain what it means to operate under Dual Diagnosis's "umbrella," or why this exempts Dual Diagnosis from establishing its Article III standing or its capacity to sue as an assignee. *See California v. Tex.*, 141 S. Ct. 2104, 2113 (2021) ("A plaintiff has standing only if he can allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.") (cleaned up). The Complaint is therefore dismissed as to Dual Diagnosis.

11

## VI. Ko.Lu.

Finally, BCBSIL asserts the relevant plan terms for patient Ko.Lu. expressly provide that BCBSIL's obligations under the plan were discharged upon its payment to patient Ko.Lu., and explicitly prohibits the type of reimbursement that Plaintiffs seek to recover. Plaintiffs argue that even if BCBSIL made a payment to the patient, to the extent such payment is less than what was required to be paid under the plan, BCBSIL has breached the plan documents and violated ERISA. The Court declines to address the merits of these arguments at this time given the fact that Ko.Lu.'s plan has an anti-assignment provision and Plaintiffs have been granted leave to amend the Complaint to address the anti-assignment provisions.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court grants Defendant's Motion to Dismiss [15]. Plaintiffs' Complaint is dismissed in its entirety, without prejudice. Plaintiffs are granted leave to file an amended complaint by July 28, 2022.

It is so ordered.

Dated: July 7, 2022

Charles P. Kocoras
United States District Judge

12